**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| MICHAEL S SUTTON LIMITED, | § § | |
| Plaintiff, | § § | |
| v. | § § | |
| NOKIA CORPORATION and NOKIA INC., | § § § | CIVIL ACTION NO. 6:07-cv-203 (LED) |
| Defendants. | § § § § § § | JURY |

**DEFENDANTS NOKIA CORPORATION AND NOKIA INC.'S MOTION FOR
PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF
<u>CLAIM 3 OF U.S. PATENT NO. 5,771,238</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF UNDISPUTED MATERIAL FACTS | 1 |
| III. | LEGAL STANDARD | 3 |
| | A. SUMMARY JUDGMENT | 3 |
| | B. INDEFINITENESS | 3 |
| | C. ENABLEMENT | 4 |
| | D. UTILITY | 5 |
| IV. | ARGUMENT | 6 |
| | A. STEPS (1) AND (2) OF CLAIM 3 ARE LOGICALLY IMPOSSIBLE TO IMPLEMENT | 6 |
| | B. STEPS (2) AND (8) OF CLAIM 3 ARE LOGICALLY IMPOSSIBLE TO IMPLEMENT | 7 |
| | C. THE INVENTION CAN NEVER BE IMPLEMENTED | 8 |
| V. | CONCLUSION | 9 |

# TABLE OF AUTHORITIES

**CASES**

*AK Steel Corp. v. Sollac*,
   344 F.3d 1234 (Fed. Cir. 2003) ................................................................................................4

*Allen Eng'g Corp. v. Bartell Indus.*,
   299 F.3d 1336 (Fed. Cir. 2002) ................................................................................................4

*Carl Zeiss Stiftung v. Renishaw PLC*,
   945 F.2d 1173 (Fed. Cir. 1991) ................................................................................................5

*CFMT, Inc. v. YieldUp Int'l Corp.*,
   349 F.3d 1333 (Fed. Cir. 2003) ................................................................................................5

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
   363 F.3d 1263 (Fed. Cir. 2004) ................................................................................................3

*EMI Group North America Inc. v. Cypress Semiconductor Corp.*,
   268 F.3d 1342 (Fed. Cir. 2001) ................................................................................................8

*Enzo Biochem, Inc. v. Calgene, Inc.*,
   188 F.3d 1362 (Fed. Cir. 1999) ................................................................................................4

*Genentech, Inc. v. Novo Nordisk A/S*,
   108 F.3d 1361 (Fed. Cir. 1997) ............................................................................................ 4-5

*Generation II Orthotics, Inc. v. Medical Tech., Inc.*,
   263 F.3d 1356 (Fed. Cir. 2001) ................................................................................................4

*Halliburton Energy Services, Inc. v. M-I LLC*,
   514 F.3d 1244 (Fed. Cir. 2008) ............................................................................................ 3-4

*Hoganas AB v. Dresser Indus., Inc.*,
   9 F.3d 948 (Fed. Cir. 1993) .....................................................................................................9

*In re Swartz*,
   232 F.3d 862 (Fed. Cir. 2000) ..................................................................................................8

*Lockwood v. American Airlines, Inc.*,
   107 F.3d 1565 (Fed. Cir. 1997) ................................................................................................3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .................................................................................................................3

*Microsoft Corp. et al. v. Commonwealth Scientific and Indus. Research Org.*,
   572 F. Supp. 2d 786 (E.D. Tex. 2008) .....................................................................................3

*Mitchell v. Tilghman*,
   86 U.S. (19 Wall.) 287 (1873) ..................................................................................................5

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*,
   403 F.3d 1364 (Fed. Cir. 2005)..................................................................................................9

*Pfizer Inc. v. Ranbaxy Labs.*,
   457 F.3d 1284 (Fed. Cir. 2006)..................................................................................................9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..................................................................................................4

*Process Control Corp. v. Hydreclaim Corp.*,
   190 F.3d 1350 (Fed. Cir. 1999)............................................................................................ 5, 8-9

*Raytheon Co. v. Roper Corp.*,
   724 F.2d 951 (Fed. Cir. 1983)................................................................................................5, 8

*Rhine v. Casio, Inc.*,
   183 F.3d 1342 (Fed. Cir. 1999)..................................................................................................4

**STATUTES**

35 U.S.C. 112, ¶ 1...............................................................................................................1, 4, 6, 9

35 U.S.C. 112, ¶ 2...............................................................................................................1, 3, 6, 9

35 U.S.C. § 101......................................................................................................................Passim

35 U.S.C. § 112.........................................................................................................................5, 8

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) .......................................................................................................................3

Fed. R. Civ. P. 56(e) .......................................................................................................................3

Local Rule CV 56 ...........................................................................................................................1

Rule 56 of the Federal Rules of Civil Procedure ...........................................................................1

U.S. Patent No. 5,771,238...................................................................................................... Passim

I.  **INTRODUCTION**

Defendants Nokia Corporation and Nokia Inc. (collectively, "Defendants"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule CV 56, hereby respectfully move this Court for an Order granting Partial Summary Judgment in Defendants' favor that claim 3 of U.S. Patent No. 5,771,238 ("the '238 Patent," attached hereto as Ex. A) is invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2, for lack of enablement under 35 U.S.C. § 112, ¶ 1, and for lack of utility under 35 U.S.C. § 101.

Although both claims 1 and 3 of the '238 Patent have been asserted by Plaintiff Michael S Sutton Limited ("Plaintiff"), the subject of this summary judgment motion is claim 3. Claim 3 contains certain logically inconsistent steps that prevent the balance of the method, which contains the purported invention, from being implemented. The patent specification contains the same logical inconsistencies and, as a result, fails to reasonably apprise those skilled in the art of the scope of the invention. The claim therefore fails to satisfy the definiteness requirement of 35 U.S.C. § 112, ¶ 2. In addition, because of the logical inconsistencies, the stated function of the invention can never occur, thereby rendering the claimed invention inoperable. As such, claim 3 fails to satisfy the enablement requirement of 35 U.S.C. § 112, ¶ 1 and has no utility under 35 U.S.C. § 101.

II. **STATEMENT OF UNDISPUTED MATERIAL FACTS**

Claim 3 of the '238 Patent recites a specific method of receiving messages on a paging receiver from a paging network. There are three types of messages that can be received according to the preamble of Claim 3: "unmodified paging messages," "data information messages," and "encoded control messages." (Ex. A, *'238 Patent*, 15:6-15.) According to the claim, the paging receiver may be configured to receive these messages. (Ex. A, *'238 Patent*,

15:16-25.) More specifically, claim 3 of the '238 Patent is a method claim comprising eight steps:

> 3. A method of receiving an incoming encoded binary message having packets transmitted over a paging network by a selective call receiver which enables the message receiver to receive at a single network address, **unmodified paging messages** and to selectively accept or reject eight bit **data information messages** and encoded **control messages** as well as being able to accept or reject data information messages specified for a specific subchannel (0-255) for which the receiver respectively is or is not currently authorised to accept; for each received packet of an incoming message the method comprising the steps of:
>
> > (1) if the received packet has a predetermined header and the **receiver is configured to receive unmodified messages**, then processing the packet as a modified packet according to steps (2) to (8), **otherwise** sending the packet to a user's application as an unmodified paging message,
> >
> > (2) if the **receiver is configured to receive only data information messages** processing the packet according to steps (3) to (8),
> >
> > (3) treating the packet as 7 bit characters and reconstituting any characters indicated by a predetermined flag,
> >
> > (4) packing the 7 bit characters into 8 bit characters,
> >
> > (5) checking a frame byte for type of packet and compression,
> >
> > (6) decompressing the packet to data,
> >
> > (7) validating the subchannel and if valid releasing security passing the data to an end user application, and
> >
> > (8) if the message is a **control message** parsing and processing the control message.

(Ex. A, *'238 Patent*, 15:6-37 (emphasis added).) Steps (1), (2), and (8) function as variables of the three types of messages. Step (1) requires the receiver to be configured to receive **unmodified messages** in order to proceed to steps (2) to (8).[1] Step (2) requires the receiver to be configured to receive **only data information messages** to proceed to steps (3) to (8). Step (8)

---

[1] Step (1) of claim 3 also requires the received packet to have "a predetermined header" in order to proceed to steps (2)-(8), however, this limitation is not at issue in the present motion.

**DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT DUE TO INVALIDITY**

2

requires the message to be a **control message** to perform the recited parsing and processing of the step.

## III. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c); *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1569 (Fed. Cir. 1997). To defeat a summary judgment motion, the opposing party must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In this regard, unsupported conclusions on the ultimate issue of invalidity are "insufficient to raise a genuine issue of material fact." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1278 (Fed. Cir. 2004). Instead, the opposing party must set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita Elec.*, 475 U.S. at 587.

### B. Indefiniteness

Every patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. 112, ¶ 2. "[C]ourts apply general claim construction principles in their efforts to construe allegedly indefinite claim terms." *Microsoft Corp. et al. v. Commonwealth Scientific and Indus. Research Org.*, 572 F. Supp. 2d 786, 802 (E.D. Tex. 2008) (Davis, J.). "Because claims delineate the patentee's right to exclude, the patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention, i.e., what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). "Otherwise, competitors cannot avoid

infringement, defeating the public notice function of patent claims." *Id.* A claim that does not satisfy this standard is invalid. *Id.* at 1256. The accused infringer bears the burden of proving indefiniteness by clear and convincing evidence. *Id.* at 1249-50.

To decide whether a claim is invalid for indefiniteness, the court must analyze "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002). "If the only claim construction that is consistent with the claim's language and the written description renders the claim invalid, then . . . the claim is simply invalid." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) (citing *Generation II Orthotics, Inc. v. Medical Tech., Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001) ("Claims can only be construed to preserve their validity where the proposed claim construction is 'practicable,' is based on sound claim construction principles, and does not revise or ignore the explicit language of the claims.").

    C.    <u>Enablement</u>

Similarly, every patent must be enabled by "contain[ing] a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. 112, ¶ 1. "[E]nablement is a question of law that the courts must decide." *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1376 (Fed. Cir. 1999). The enablement requirement is satisfied "when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation." *AK Steel Corp. v. Sollac*, 344 F.3d 1234, 1238-39 (Fed. Cir. 2003). "To be enabling, the specification of a patent must teach those skilled in the art how to make and use the <u>full scope</u> of

the claimed invention without undue experimentation." *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997) (emphasis added). "Because it is for the invention as claimed that enablement must exist, and because the impossible cannot be enabled, a claim containing a limitation impossible to meet may be held invalid under § 112." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956 (Fed. Cir. 1983).

    D.    <u>Utility</u>

35 U.S.C. § 101 states, in relevant part, that a patent is available to "whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter." "To meet the utility requirement, the Supreme Court has held that a new product or process must be shown to be 'operable'—that is, it must be 'capable of being used to effect the object proposed.'" *Carl Zeiss Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1180 (Fed. Cir. 1991) (quoting *Mitchell v. Tilghman*, 86 U.S. (19 Wall.) 287, 396 (1873)). Utility and enablement are closely related. "The utility requirement of 35 U.S.C. § 101 mandates that any patentable invention be useful and, accordingly, the subject matter of the claim must be operable. If a patent claim fails to meet the utility requirement because it is not useful or operative, then it also fails to meet the how-to-use aspect of the enablement requirement." *Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1358 (Fed. Cir. 1999) (internal citations omitted); *CFMT, Inc. v. YieldUp Int'l Corp.*, 349 F.3d 1333, 1339 (Fed. Cir. 2003) ("The inoperability standard for utility applies primarily to claims with impossible limitations") (citing *Process Control*). "Moreover, when a claim requires a means for accomplishing an unattainable result, the claimed invention must be considered inoperative as claimed and the claim must be held invalid under either § 101 or § 112 of 35 U.S.C." *Raytheon Co.*, 724 F.2d at 956.

## IV. ARGUMENT

Claim 3 of the '238 Patent is invalid because the steps outlined in the claim are logically impossible to implement — step (1) versus step (2) and step (2) versus step (8) — making claim 3 indefinite under § 112, ¶ 2, not enabled under § 112, ¶ 1, and not useful under § 101.

### A. Steps (1) and (2) of Claim 3 are Logically Impossible to Implement

The first two steps of claim 3 present a logical inconsistency that make it impossible for the remainder of the claimed steps to ever be implemented. Specifically, the first step states:

> (1) if … **the receiver is configured to receive unmodified messages**, then process[ ] the packet … according to steps (2) to (8)

However, the second step states:

> (2) if **the receiver is configured to receive only data information messages** process[ ] the packet according to steps (3) to (8)

Therefore, step (1) requires the receiver to be configured to receive unmodified messages to proceed to step (2), but step (2) requires the receiver to be configured to receive **only** data information messages. Under the language of step (2), the receiver can never be configured to receive unmodified messages because it is not possible for the receiver to be configured **both** to receive unmodified messages and to receive **only** data information messages.

Reading the claim in light of the specification does not reasonably apprise one of ordinary skill in the art of the bounds of claim 3 because the specification repeats the same logical inconsistency not once, but twice. The portions of the '238 Patent specification that discuss the receiver's configuration and received message types do not clarify the language of claim 3. The specification recites for each received packet in an incoming message the method comprising the steps of:

> (1) if the received packet has a predetermined header and **the receiver is configured to receive unmodified messages**, then processing the packet as a modified packet according to steps (2)

> to (8), otherwise sending the packet to a user's application as an unmodified paging message,
>
> (2) if **the receiver is configured to receive only data information messages** processing the packet according to steps (3) to (8)

(Ex. A, *'238 Patent*, 4:1-9 (emphasis added).) The specification of the '238 Patent further explains that the decoding process at the receiver includes the following steps:

> a) If the incoming message has a predetermined header string, which for the example described above is "^^^", and **the channel is configured to receive unmodified messages** then process as a modified packet, otherwise send the message to a user's application as unmodified paging message (tone, numeric text).
>
> b) If **the channel is configured to receive only Data Information Messages** process (b-k).

(Ex. A, *'238 Patent*, 7:39-47 (emphasis added).) As a result, one skilled in the art would not understand the bounds of the claim even when read in light of the specification. Claim 3 is indefinite, and therefore, invalid.

### B. Steps (2) and (8) of Claim 3 are Logically Impossible to Implement

As noted above, step (2) of claim 3 requires the receiver to be configured to receive **only** data information messages in order to continue on to steps (3) through (8). However, this step is contradictory to step (8) of the claim, which states:

> (8) if the message is a **control message** parsing and processing the control message.

As noted above, there are three distinct types of messages recited in claim 3 — unmodified messages, data information messages, and control messages. A control message is distinct from a data information message, as is evident in the language of the claim itself. (*See* Ex. A, *'238 Patent*, 15:11.) Because step (2) of the method "process[es] the packet according to steps (3) through (8)" **only** if the receiver is configured to receive data information messages, it is inherently impossible to reach step (8) since step (8) is only reached if the receiver is configured

to receive only data information messages. Therefore, one skilled in the art would not understand the claim, and claim 3 is indefinite.

### C.  The Invention Can Never be Implemented

As a result of the logical inconsistencies described above, the alleged invention of claim 3 is not enabled or useful because it can never be implemented. The alleged inventive feature of the '238 Patent, to transfer seven-bit characters back to eight-bit characters, is claimed in steps (3)-(8) of claim 3. (*See* Ex. A, *'238 Patent*, Abstract ("Transmission (206) and reception techniques and apparatus (209) allow a restricted seven bit one way radio data network, such as a paging network (202), to transmit eight bit ASCII and binary data.").) However, as explained above, the logical inconsistency between step (1) and step (2), and the logical inconsistency between step (2) and step (8), make it is impossible for the method of claim 3 to be practiced. Thus, claim 3 fails to yield the promised utility of allowing a seven-bit pager system to receive eight-bit characters.

"A claimed invention having an inoperable or impossible claim limitation may lack utility under 35 U.S.C. § 101 and certainly lacks an enabling disclosure under 35 U.S.C. § 112." *EMI Group North America Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1348 (Fed. Cir. 2001) (citing *Raytheon Co.*, 724 F.2d at 956); *see also In re Swartz*, 232 F.3d 862, 863 (Fed. Cir. 2000) ("If the claims in an application fail to meet the utility requirement because the invention is inoperative, they also fail to meet the enablement requirement because a person skilled in the art cannot practice the invention."). In *Process Control*, the claim at issue was logically impossible to implement, and as a result was held to be invalid for both lack of enablement and lack of utility. "In other words, clause [d] requires determining a quantity from the sum of that exact same quantity and something else, or symbolically, $A = A + B$, which is impossible, where,

as here, B is not equal to zero. Accordingly, we hold that the correctly construed claims are invalid because they are inoperative, and thus the claims fail to comply with the utility and enablement requirements of 35 U.S.C. §§ 101 and 112, ¶ 1, respectively." 190 F.3d at 1359. The '238 Patent presents a similar situation. Claim 3 of the '238 Patent requires that A = 1 (receiver configured to receive unmodified messages) to go from step (1) to step (2), while step (2) requires that A = 2, **and only 2** (receiver configured to receive only data information messages), to continue to steps (3)-(8). Similarly, the type of message described in step (8) (control messages, or A = 3 to continue with the example) will never be received since A = 2. It is impossible for these conditions to all be met. For the same reasons as the Federal Circuit held in *Process Control*, claim 3 fails to comply with the utility requirement of 35 U.S.C. § 101 and the enablement requirement of § 112, ¶ 1.

The patentee might have intended for claim 3 and its corresponding specification disclosures to present a definite and enabling method, but it failed to do so, and courts "should not rewrite claims to preserve validity." *Pfizer Inc. v. Ranbaxy Labs.*, 457 F.3d 1284, 1292 (Fed. Cir. 2006) (citing *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1368 (Fed. Cir. 2005)); *see also Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed. Cir. 1993) ("If the patentee, who was responsible for drafting and prosecuting the patent, intended something different, it could have prevented this result through clearer drafting.").

## V.  CONCLUSION

For at least the foregoing reasons, Defendants respectfully request that the Court enter partial summary judgment of invalidity of claim 3 of the '238 Patent for indefiniteness under 35 U.S.C. § 112, ¶ 2, or in the alternative, for lack of enablement under 35 U.S.C. § 112, ¶ 1, or in the alternative, for lack of utility under 35 U.S.C. § 101.

Dated:  May 1, 2009                                     Respectfully submitted,

                                                */s/ Diane V. DeVasto*
                                                Michael E. Jones
                                                State Bar No. 10929400
                                                mikejones@potterminton.com
                                                Diane V. DeVasto
                                                State Bar No. 05784100
                                                dianedevasto@potterminton.com
                                                POTTER MINTON
                                                A Professional Corporation
                                                110 N. College, Suite 500
                                                Tyler, Texas 75702
                                                Telephone:  903/597-8311
                                                Facsimile: 903/593-0846

                                                Robert F. Perry
                                                rperry@kslaw.com
                                                Alexas D. Skucas
                                                askucas@kslaw.com
                                                Susan A. Kim
                                                skim@kslaw.com
                                                Mark H. Francis
                                                mfrancis@kslaw.com
                                                KING & SPALDING LLP
                                                1185 Avenue of the Americas
                                                New York, NY 10036-4003
                                                Telephone:  (212) 556-2100
                                                Facsimile:   (212) 556-2222

                                                **ATTORNEYS FOR DEFENDANTS NOKIA CORPORATION AND NOKIA INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 1, 2009. Any other counsel of record will be served by first class mail on this same date.

>
> */s/ Diane V. DeVasto*
> Diane V. DeVasto