# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| MICHAEL S SUTTON LIMITED, | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| NOKIA CORPORATION and NOKIA INC., | § § § § § | CIVIL ACTION NO. 6:07-cv-203 (LED) |
| Defendants. | § § § § § | JURY |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
## FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY
## <u>OF CLAIM 3 OF U.S. PATENT NO. 5,771,238</u>

## I. INTRODUCTION

*Plaintiff's Response to Defendants' Motion for Partial Summary Judgment of Invalidity of Claim 3 of U.S. Patent No. 5,771,238* (Dkt. 95) ("Plaintiff's Response") confirms that step 2 of claim 3 of the '238 patent[1] is logically impossible to implement in view of step 1. There is also an inconsistency between steps 2 and 8 of claim 3 that Plaintiff attempts to explain away in a manner that contradicts the intrinsic evidence. As a result, Plaintiff's convoluted response only reinforces the critical flaws in claim 3 raised by Defendants' motion.

## II. PLAINTIFF FAILS TO RAISE A GENUINE ISSUE OF MATERIAL FACT

### A. Plaintiff's Own Argument Verifies the Inconsistency in Steps 1 and 2

Plaintiff's Response succinctly demonstrates the inconsistency between steps 1 and 2 of claim 3, namely that a receiver "configured to receive unmodified messages" (step 1) cannot also be a receiver "configured to receive *only* data information messages" (step 2). In making a separate argument with respect to step 8, Plaintiff acknowledges that unmodified messages are different from data information messages, thereby exposing the inconsistencies in the claim language. (*See* Plaintiff's Response at 8 ("Data information messages are not distinguished from control messages, *but only from Transparent Data Messages or Unmodified Messages*." (emphasis added)).) The distinction between data information messages and unmodified messages is indisputable in the '238 patent – in particular, data information messages are one type of message processed by the invention while unmodified messages are not processed. (*See* '238 patent 8:60–64 (unmodified messages such as tone, numeric and text are conventional paging services that bypass the steps of the invention); *see also* Figs. 1a and 1b (unmodified messages 103, 104 and 105 skip the steps of the invention).)

---

[1] U.S. Patent No. 5,771,238 is attached as Ex. A to *Defendants' Motion for Partial Summary Judgment of Invalidity of Claim 3 of U.S. Patent No. 5,771,238*) ("Summary Judgment Motion") (Dkt. 82).

Given that the parties are in agreement that data information messages are different from unmodified messages (which is also consistent with the preamble of claim 3 and the other intrinsic evidence), the disconnect in claim 3 is inescapable because step 2 can never be performed. The only way to get to step 2 from step 1 is if the receiver is "configured to receive unmodified messages, then processing . . . according to steps (2) to (8)," while step 2 recites the predicate "if the receiver is configured to receive *only* data information messages." The receiver cannot be configured to receive *only* data information messages if it is configured to receive unmodified messages because the two are separate and distinct. (*See* Plaintiff's Response at 8.) Far from being short of clear and convincing as stated by Plaintiff, this conclusion is logically unavoidable by Plaintiff's own admission and renders the claim indefinite and not enabled.

    **B. Plaintiff's Argument with Respect to the Inconsistency Between Steps 2 and 8 Contradicts the Intrinsic Evidence and Attempts to Read "Only" Out of the Claim**

Plaintiff's Response relating to steps 2 and 8 of claim 3 directly contradicts the '238 patent itself. Step 2 checks whether the receiver is configured to receive "only data information messages" and, if so, proceeds to steps 3 through 8. Step 8, on the other hand, queries "if the message is a control message." Plaintiff argues that "data information messages" may include "control messages" (also called "Encoded Control Messages") (Plaintiff's Response at 2, 8 (*citing* '238 patent 8:34–41)), but Plaintiff's argument is based on an incorrect reading of the specification. An image of the cited section of the specification is shown below:

```
7. Five types of message classifications are used:
   1. Transparent Data Messages (paging) (T)
   2. Data Messages:
   3. Unencoded Data (UD)
   4. Encoded Data (ED)
   5. Encoded Control Messages (ECM)
   6. Encoded Service Messages (ESM)
```

('238 patent at 8:33–40.) Plaintiff contends that this passage shows that "Encoded Control Messages" are a subset of "Data Messages." (*See* Plaintiff's Response at 8.) However, the original application to which Plaintiff asserts priority demonstrates the proper reading of the above list, specifically showing that data messages are classified separately from Encoded Control Messages:

```
13.  Five types of message classifications are used:
        1.   Transparent Data Messages (paging)  (T)
        2.   Data Messages:
             3.   Unencoded Data        (UD)
             4.   Encoded Data          (ED)
        5.   Encoded Control Messages   (ECM)
        6.   Encoded Service Messages   (ESM)
```

(March 10, 1993 New Zealand Provisional Specification 247,104 ("NZ Provisional") at 9 (Ex. B)[2].) As the NZ Provisional unequivocally demonstrates, there are two types of "Data Messages" ("Unencoded Data" and "Encoded Data"), while "Encoded Control Messages" are plainly mutually exclusive from "Data Messages." By attempting to take advantage of a typographical/formatting oversight in the '238 patent, Plaintiff posits a disingenuous reading of the claim and the corresponding specification. In any event, the very next column of the '238 patent describes the unique characteristics of each of the five message types – and data messages are clearly distinguished from control messages. (*See* '238 patent at 9:1–30 ("i. Transparent Messages: . . . ii. Data Messages; data packets can either be encoded or non encoded . . . iii. Encoded Control Messages: . . . iv. Encoded Service Messages: . . .").)

Other examples in the specification also make it absolutely clear that the data information messages of claim 3 are distinct from control messages. (*See, e.g.,* '238 Patent at 7:28–30 (the

---

[2] References to "Ex. _" are Exhibits attached to the Declaration of Alexas D. Skucas, submitted with this brief, and begin with Ex. B as a continuation from Exhibit A attached to Defendants' Summary Judgment Motion.

receiver can "selectively accept or reject eight bit Data Information Messages, Encoded Control Messages based on the successful decoding of messages received"); *id.* at 3:61–62 (the receiver selectively accepts or rejects "eight bit data information messages and encoded control messages"); *id.* at 10:21 ("[e]ach byte in Data and Control Message packets are checked"); *id.* at 9:20–23 ("Unlike Data Messages, Control Messages use a different frame byte structure and do not include a subchannel identifying byte").) These references also demonstrate that the '238 patent uses "Encoded Control Messages" and "control messages" interchangeably. (*See also id.* at 9:19 ("Encoded Control Messages: All Control Messages. . .").) Therefore, Plaintiff's argument that "the 'data information message' of step (2) may be or may encompass the 'control message' of step (8)" (Plaintiff's Response at 1) is explicitly and repeatedly contradicted by the claim preamble itself, the '238 patent specification and the other intrinsic evidence.

In addition to mischaracterizing the specification, Plaintiff attempts to read out the requirement of step 2 in claim 3 that the receiver be configured to "receive *only* data information messages" before proceeding to steps 3 through 8. For example, Plaintiff simply ignores the purpose of the word "only" when arguing that a "receiver configured to receive 'data information messages' is configured to receive control messages." (Plaintiff's Response at 8.) In making this argument, Plaintiff fails to identify what purpose step 2 serves. Rewriting the claim to ignore "only" is also improper because the law mandates that a claim term be interpreted with its clear meaning. *See Chef America, Inc., v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("Where, as here, the claim is susceptible to only one reasonable construction . . . we must construe the claims based on the patentee's version of the claim as he himself drafted it.") (quoting *Process Control Corp. v. Hydreclaim Corp.*, 190 F.3d 1350, 1357 (Fed. Cir. 1999)). "Only" is an "ordinary, simple English word[] whose meaning is clear and unquestionable" and

it is settled practice that the Court will "construe the claim as written, not as the patentees wish they had written it." *Chef America*, 358 F.3d at 1373-74.

### C. Plaintiff's Expert Supported Defendants' Position at Deposition

Because Plaintiff cannot find support within the '238 patent for its misguided interpretation of claim 3, Plaintiff resorts to a conclusory expert declaration that does not explain how Plaintiff's interpretation of the claim language at issue is supported by the specification of the '238 patent. (*See, e.g.*, Plaintiff's Response at 1, 5, 7, 8.) Despite the conclusory nature of his declaration, Plaintiff's expert agreed during a deposition that the preamble of claim 3 distinguishes between Data Information Messages and Encoded Control Messages:

> [Defendants' counsel:] So the preamble is making a distinction between data information messages and encoded control messages, correct? . . .
>
> [Dr. Myler:] Yes.

(May 27, 2009 Deposition of Dr. Harley Myler (rough draft) at 149:24–150:3 (Ex. C).) Moreover, Plaintiff's expert could not even explain the function of step 2 in claim 3:

> [Defendants' counsel:] What's the purpose of step 2?
>
> [Dr. Myler:] I've often wondered that. I've often wondered what that purpose is. . . . Because it simply passes through to 3 through 8. So you get to step 1, make some decisions and then say go to steps 2 through 8. Then you look at 2 and it just simply passes on to 3 through 8. But, see, your original question was you have to do 3 after 2. Well, if 2 is superfluous, the answer is no. And that's what it reads to me. It's sort of superfluous.

(*Id*. at 152:5–17.) It is incongruous for Plaintiff to take the position that step 2 of claim 3 is "superfluous" and serves no purpose, especially when step 1 expressly requires step 2 to process certain messages. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving

examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration. For that reason, claims are interpreted with an eye toward giving effect to all terms in the claim."); *see also SciCoTech GmbH v. Boston Sci. Corp.*, No. 9:07-cv-76, 2008 U.S. Dist. LEXIS 67827 at *19 (E.D. Tex. Aug. 29, 2008) ("The overarching, and ultimately fatal, flaw with [the party's] position is that it requires the court to render meaningless or superfluous [certain claim] words") (Ex. D). If Plaintiff's own expert cannot determine the purpose of step 2, how can the public be expected to do so?

## III. CONCLUSION

For these reasons and for the reasons raised in its opening brief, Defendants respectfully request that the Court grant Defendants' Motion for Partial Summary Judgment of Invalidity.

Dated:  June 5, 2009                                    Respectfully submitted,

*/s/ Diane V. DeVasto*
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Diane V. DeVasto
State Bar No. 05784100
dianedevasto@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Telephone:  903/597-8311
Facsimile: 903/593-0846

Robert F. Perry
rperry@kslaw.com
Alexas D. Skucas
askucas@kslaw.com
Susan A. Kim
skim@kslaw.com
Mark H. Francis
mfrancis@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:  (212) 556-2100
Facsimile:   (212) 556-2222

**ATTORNEYS FOR DEFENDANTS NOKIA CORPORATION AND NOKIA INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 5, 2009. Any other counsel of record will be served by first class mail on this same date.

*/s/ Diane V. DeVasto*
Diane V. DeVasto